UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

UNITED STATES OF AMERICA

v.

DAVID HOPE

                     Defendant.

------------------------------------------------------------

15-Cr-888 (SHS)

<u>OPINION & ORDER</u>

SIDNEY H. STEIN, U.S. District Judge.

Defendant David Hope has filed two pro se motions for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). (*See* First Mot., ECF No. 79; Second Mot., ECF No. 80.) The first motion seeks release on the grounds of his deteriorating health; the second seeks relief in light of his increased risk of severe illness should he contract the COVID-19 virus. Hope is currently serving a 216-month sentence at the United States Medical Center for Federal Prisoners, Springfield (Springfield MCFP), after having pled guilty to his organizing role in a two-year sex trafficking conspiracy using firearms and exploiting minors.

For the reasons articulated below, the Court concludes that a reduction in Hope's sentence would neither be "consistent with the applicable policy statements issued by the Sentencing Commission," 18 U.S.C. § 3582(c)(1)(A)(i), nor be supported by the "factors set forth in section 3553(a)," *id.* § 3582(c)(1)(A). Accordingly, both motions, which are considered together, are denied.

## I. BACKGROUND

In December 2015, Hope was charged in a seven-count indictment for conduct which included participating in a sex trafficking conspiracy, sex trafficking minors, using interstate commerce to promote unlawful activity, possessing child pornography, and being a felon in possession of a firearm. (*See* Indictment, ECF No. 8.) Hope's two-year long scheme employed a myriad of manipulative and violent tactics to sexually exploit vulnerable underage girls and young women for his own financial gain. (Revised Final Presentence Investigation Report (PSR) ¶ 18, ECF No. 78.) Hope ultimately pled guilty pursuant to a plea agreement to sex trafficking conspiracy, sex trafficking a minor, possession of child pornography, and being a felon in possession of a firearm. (*See* PSR ¶ 11.)

Notably, this was not defendant's first brush with the criminal justice system. Hope has previously spent three years in state prison for convictions relating to attempted

robbery and the sale of a controlled substance.  (*See* Sentencing Tr. at 17, ECF No. 63; PSR ¶¶ 160–61.)  Following his release from state prison, Hope was contacted by the Brooklyn District Attorney's Office and became, ironically, a paid motivational speaker against gun violence.  (PSR ¶ 181.)

The nature of Hope's conduct and his extensive criminal history yielded a Guideline range of 360 months' to life imprisonment.  (PSR ¶ 186.)  On May 31, 2017, this Court sentenced Hope to 216 months' imprisonment followed by five years' supervised release.  (*See* Judgment at 3, ECF No. 61.)  Hope's projected release date is October 23, 2031.  He has served approximately 54 months, which is merely one quarter of his total incarceratory sentence.  At sentencing, the Court recommended that the Bureau of Prisons (BOP) incarcerate defendant in a facility that "can accommodate his medical conditions."  (Judgment at 3.)

Although Hope is relatively young—33 years old—he is not healthy.  At age 19, Hope was shot three times in the back during a gang dispute.  (PSR ¶ 172; Sentencing Tr. at 18.)  As a result, Hope is paraplegic.  (*See* PSR ¶ 20.)  He is confined to a wheelchair and requires extensive medical care.  (*Id*. ¶ 172; Sentencing Tr. at 15.)  Hope uses a catheter, suffers from deep vein thrombosis, neurogenic bowel, muscle weakness, and has reported bone infections from bed sores as well as frequent urinary tract infections.  (PSR ¶ 173; Second Mot. at 3.)  Nonetheless, his physical impairments did not stop him from sexually exploiting young women and underage girls over a two-year period.

Following sentencing, Hope states that he was sent to FCI Allenwood, where, according to Hope, he was denied the medial attention that his disability requires.  (First Mot. at 1, 15, 20.)  Hope filed several petitions through the BOP's Administrative Remedy Program seeking medical attention and transfer, but alleges that the BOP denied his requests concluding that he was "functionally independent" and thus able to "perform activities of daily living independently."  (*Id*. at 15–24.)  At some point, however, Hope was transferred to Springfield MCFP.  (*See* First Mot. at 1; Second Mot. at 2, 4.)

Hope's second motion for compassionate release attaches a memorandum addressed to the warden of Springfield MCFP from the BOP's Office of General Counsel denying Hope's request for a reduction in sentence after "carefully review[ing] the documentation" and "consult[ing] with the BOP's Medical Director."  (Second Mot. at 2.)  The memo explains that "[a]lthough Mr. Hope is confined to his bed or chair for more than 50 percent of his waking hours" and requires assistance with his daily activities, "his true baseline level of independent and functional status cannot be determined, as he has declined all physical therapy appointments."  (*Id*. at 3.)

In Hope's second application to this Court, he reemphasizes his inability to perform basic daily tasks and vehemently disputes the BOP's representation that he refused to attend scheduled physical therapy appointments.  (*Id*. at 5, 6, 8.)  Finally, Hope urges the

Court to reduce his sentence in light of the COVID-19 virus, for which he is at an increased risk of complications. (*Id.* at 6.)

## II. LEGAL STANDARD

"Federal courts are forbidden, as a general matter, to 'modify a term of imprisonment once it has been imposed,' 18 U.S.C. § 3582(c); but the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). Compassionate release is one of the limited exceptions enumerated in 18 U.S.C. § 3582(c). Under the recently enacted First Step Act, "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf," a court may reduce a defendant's sentence if it finds that "extraordinary and compelling circumstances warrant such a reduction," and that "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Court must also consider the "factors set forth in section 3553(a) to the extent that they are applicable." *Id.* § 3582(c)(1)(A).

Congress has delegated responsibility to the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction." 28 U.S.C. § 944(t). The Sentencing Commission's policy statement and its corresponding commentary on section 3582(c)(1)(A) describe circumstances under which "extraordinary and compelling reasons exist," including where the defendant is "suffering from a serious physical or mental condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover." U.S.S.G. § 1B1.13(1)(A) & cmt. 1(A)(I).

## III. DISCUSSION

At the threshold, it appears Hope has exhausted his administrative remedies. Hope's first motion attaches copies of several appeals that he filed through the Administrative Remedy Program. (*See* First Mot. at 15–24.) Hope represents that the BOP denied these requests, finding him to be "functionally independent" and thus able to "perform activities of daily living independently." (*Id.* at 19.) Hope's second motion includes a memo addressed to the warden of Springfield MCFP from the BOP's general counsel denying Hope's request for a reduction in sentence after "carefully review[ing] the documentation" and "consult[ing] with the BOP's Medical Director." (Second Mot. at 2.) The Court need not decide the issue of whether Hope has exhausted his administrative remedies, however, because Hope's motions fail on the merits.

Granting Hope a reduction in sentence would neither be "consistent with the applicable policy statement issued by the Sentencing Commission," 18 U.S.C. § 3582(c)(1)(A)(i), nor be supported by the "factors set forth in section 3553(a),"

*id.* § 3582(c)(1)(A).  The Court first turns to the pertinent Sentencing Commission policy statement.   There is no question that the COVID-19 pandemic qualifies as an "extraordinary and compelling reason" for this defendant.  Hope is paraplegic (*see* PSR ¶ 172), a condition which certainly diminishes his ability to provide self-care and from which he is not expected to recover.  *See* U.S.S.G. § 1B1.13(1)(A) & cmt. 1(A)(I).  Hope's host of medical ailments arising from his paraplegia would likely place him at higher risk of complications should he contract COVID-19.  *See People Who Are at Higher Risk for Severe Illness*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last updated May 14, 2020) (identifying "people of any age who have serious underlying medical conditions" as individuals who "might be at higher risk for severe illness from COVID-19").

But the Sentencing Commission policy statement also requires that the Court find that "the defendant is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2); *see also* 18 U.S.C. § 3553(a)(2)(C).  This the Court cannot do.  By any measure, Hope's conduct was violent, severe, and senseless.  Hope recruited and sexually exploited vulnerable underage girls and young women for his own financial gain.  (PSR ¶ 18.)  Hope concealed a firearm in a special compartment of his wheelchair and used a variety of tactics to control his victims, including manipulation, intimation, coercion, threats, and violence.  (*Id.* ¶ 18, 32.)  Hope now claims that he "is so physically debilitated that he does not pose a danger to the public."  (Second Mot. at 10.)  But the existence of these same conditions did not impede him from committing the crimes for which he is currently incarcerated.   The facts here stand in stark contrast to cases in which a defendant is terminally ill, incapacitated, and therefore no longer able to inflict further harm on the community.  *See, e.g.*, *United States v. Asaro*, No. 17-CR-127 (ARR), 2020 WL 1899221, at *1, *7 (E.D.N.Y. Apr. 17, 2020) (granting compassionate release to a previously violent defendant because his physical ailments, including expressive aphasia, made it unlikely that he remained capable to orchestrate complex criminal schemes); *United States v. Willis*, 382 F. Supp. 3d 1185, 1189 (D.N.M 2019) (granting compassionate release to a wheelchair-bound and blind defendant who required 24/7 care and had an estimated 18 months to live).  The record before the Court certainly suggests that Hope remains capable of engaging in the same type of behavior that led to his incarceration.

Finally, the Court cannot conclude that the application of the section 3553(a) factors favors an early release.  Indeed, factors such as "the nature and circumstances of the offense" and "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law . . . to provide just punishment for the offense . . . to afford adequate deterrence to criminal conduct" weigh against Hope's release.  18 U.S.C. § 3553(a).  Hope's conduct, which he engaged in after spending three years in state prison and serving as an anti-gun violence advocate, demonstrates a complete "disregard for the criminal justice system."  (Sentencing Tr. at 10.)  Moreover, the Court imposed a

4

sentence far below the Guidelines range of 360 months to life imprisonment. Granting Hope a reduction in his sentence when he has served merely a quarter of his 216-month incarceratory term would disserve these important section 3553(a) factors. *See, e.g., United States v. Walter*, No. 18 Cr. 834 (PAE), ECF No. 469 (S.D.N.Y. April 16, 2020) (denying, as inconsistent with section 3553(a) factors, compassionate release motion where defendant had served only 17 months of a 62-month term sentence).

## IV. CONCLUSION

Ultimately, Hope's health considerations, while significant, are decidedly outweighed by the factors that militate in favor of his continued detention. *See United States v. Ebbers*, No. S402CR11443VEC, 2020 WL 91399, at *7 (S.D.N.Y. Jan. 8, 2020); *Asaro*, 2020 WL 1899221, at *8. The Court does not disbelieve that Hope experiences continuing discomfort from his ailments, nor does it seek to minimize his risk of complications should he contract COVID-19. But the Court cannot discount the severity of his conduct or his repeated failure to be rehabilitated.

Accordingly, IT IS HEREBY ORDERED that defendant's motions are denied. The Clerk of Court is directed to mail a copy of this Order to defendant David ("Dave") Hope [73402-054] at MCFP Springfield, Federal Medical Center, P.O. BOX 4000, Springfield, MO 65801.

Dated: New York, New York
       June 1, 2020

SO ORDERED

SIDNEY H. STEIN
U.S.D.J.

5